**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | **CIVIL ACTION NO.** |
| **Plaintiff,** | * | **SECTION:** |
| v. | * | |
| **$231,130.00 IN U.S. CURRENCY SEIZED FROM ACCOUNT NOS: 1001852860, 1001391281, 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323 AT PACIFIC WESTERN BANK** | * * * | |
| **Defendant *In Rem*.** | * | |
| | * | |
| * * * | | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, the United States of America, by and through its undersigned counsel, alleges as follows:

**I.   NATURE OF THE ACTION**

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as follows (collectively, the "Defendant Assets"):

   (i) $231,130.00 in U.S. currency seized from account number 1001852860, 1001391281, 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323 (together the "SUBJECT ACCOUNTS") at PACIFIC WESTERN BANK.

## II.     JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Louisiana, and because this is the same District where the Defendant Assets were brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III.    FACTUAL ALLEGATIONS

At all times material to this Action:

### A. The Medicare Program and OTC COVID-19 Tests

5. The Medicare Program ("Medicare") is a federal health care program that provides medical benefits, items, and services to beneficiaries aged 65 or older, under age 65 with certain disabilities, and of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant.) The Centers for Medicare and Medicaid Services ("CMS") is an agency of the Department of Health and Human Services ("HHS") and is the federal government body responsible for the administration of Medicare.

6. Medicare includes coverage under component parts. Medicare Part A is a hospital insurance program that covers beneficiaries for, among other types of care, inpatient care in hospitals and other facilities. Medicare Part B is a medical insurance program that covers doctors' services, outpatient care, diagnostic testing, durable medical equipment, and other medical items and services not covered under Medicare Part A.

7. Laboratories, pharmacies, physicians, nurse practitioners, and other health care providers that furnish items and services to Medicare beneficiaries are referred to as Medicare "providers." To become a provider eligible to submit claims to Medicare, a company must first apply for a unique National Provider Identifier ("NPI") number from CMS. After obtaining an NPI, a company can apply to the Medicare Administrative Contractor (MAC) for Medicare provider billing privileges. The company can do this by completing a Medicare Enrollment Application Form CMS-855B along with any necessary supporting documentation. After completing the Form CMS-855B, the company may obtain a provider ID number. A supplier must have both an NPI and a provider ID number in order to be eligible to receive Medicare payment for covered services.

8. The Form CMS-855B is a key step in the Medicare enrollment process for Medicare Part B providers. The Form CMS-855B calls for information about the "owners" and "managing employees" of the provider. The term "owner" refers to any person with at least a five-percent stake in the company. The term "managing employee" refers to any individual who has operational or managerial control over the provider, or who conducts the day-to-day operations of the provider.

9. Further, the Form CMS-855B requires that an authorized official certify the contents of the application and attest that the company meets and will maintain certain requirements. In relevant part, the certification states that the official: (a) "agree[s] to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization" (b) "understand[s] that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law)"; and (c) "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare,

and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

10. National Government Services, Inc. ("NGS") is the MAC Jurisdiction for the state of New York among others. The MAC Evaluates and adjudicates, and processes claims sent to Medicare. If claims are approved, funds are transferred directly to the provider's bank account listed in the EFT Authorization Agreement (CMS-588 Form).

11. Each Medicare beneficiary is identified with a unique beneficiary identification number. These beneficiary identification numbers are used to determine a beneficiary's eligibility for Medicare benefits and to submit claims to Medicare seeking reimbursement for covered benefits, items, and services. Health Insurance Claim Numbers ("HICNs") and Medicare Beneficiary Identifiers ("MBIs") are two types of Medicare beneficiary identification numbers.

12. HICNs were typically comprised of the beneficiary's social security number and often include one or more additional letters.  In 2015, Congress passed the Medicare Access and CHIP Reauthorization Act ("MACRA"), which mandated that CMS phase out the use of social security numbers in the assignment of Medicare beneficiary identification numbers.

13. Following the passage of MACRA, CMS began to assign Medicare beneficiaries MBIs, which are comprised of a unique series of eleven randomly generated numbers and letters. MBIs, like HICNs, are used to identify qualifying beneficiaries in all Medicare transactions such as billing and claim submissions.  One purpose of using a randomly generated series of numbers and letters was to improve patient identity protection and prevent identify theft.

14. Beginning on April 4, 2022, and continuing through the end of the COVID-19 public health emergency, Medicare covered and paid for OTC ("over the counter," i.e., not prescribed or ordered by a physician) COVID-19 tests at no cost to beneficiaries with Medicare Part B and Medicare Advantage plans. Eligible providers capable of providing ambulatory health

care services were permitted to distribute OTC COVID-19 tests that were approved, authorized, or cleared by the U.S. Food and Drug Administration.

15. Medicare would not pay for more than eight OTC COVID-19 tests, per calendar month, per Medicare beneficiary. Providers could distribute OTC COVID-19 tests to Medicare beneficiaries who requested them and were required to keep documentation showing a Medicare beneficiary's request for the tests. The guidance promulgated by Medicare regarding the provision of and billing for COVID-19 tests states that the tests are to be provided to the beneficiaries only upon request, and that failure to have documentation demonstrating that the beneficiary requested the tests is grounds for recoupment of funds.

16. Medicare did not cover OTC COVID-19 tests billed by durable medical equipment suppliers or providers who distributed OTC COVID-19 tests to Medicare beneficiaries during an inpatient stay at a hospital or skilled nursing facility.

17. When submitting claims to Medicare for COVID-19 tests, providers use HCPCS codes. HCPCS codes are published by the American Medical Association. The codes are part of a uniform coding system used to identify, describe, and code medical, surgical, and diagnostic services performed by practicing physicians and other health care providers. Medicare providers also use the same codes to identify, describe, and code equipment and materials that they supply.

18. An HCPCS code is a five-character, alphanumeric identifier that is intended to simplify reporting and accurately identify equipment and services that are supplied to a patient. Medical providers indicate on their reimbursement claims the HCPCS codes that correspond to the types of equipment or services for which Medicare is being charged. These codes are used to

determine the reimbursement. The HCPCS code relevant to this case is K1034, which is defined as follows: "Provision of COVID-19 test, nonprescription self-administered and self-collected use, FDA-approved, authorized or cleared, one test count."

19. The Medicare claims form, Form CMS-1500, required providers to certify that the claim complied with applicable Medicare laws and regulations, including the Federal Anti-Kickback Statute. When a CMS Form 1500 is submitted, the provider certifies that the contents of the form are true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. On the form, the Medicare provider certifies that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations." The form advises the provider that "anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws."

20. Medicare will not reimburse providers for claims for items or services that were procured in violation of the Federal Anti-Kickback Statute or in violation of the provision prohibiting the purchase, sale, and distribution of Medicare beneficiary identification numbers.

B. **Accountholders**

21. A company (the "Medicare Provider") that is part of the group of companies (the "Group") that owned the Subject Accounts has been enrolled as a Medicare provider since on or about August 29, 2020.

22.  The Medicare Provider had a location at and address that is located within the Eastern District of Louisiana. The primary operating company (the "Primary Operating Company") of the Group and the owner of the main account used by the Group, Account Number 1001391281 (the "Main Account"), is a Georgia limited liability company that is qualified to do business in Louisiana.

23.  According to Medicare documentation, Medicare Provider has been enrolled as a Medicare provider since August 2020.

24.  By enrolling as a provider in Medicare, Medicare Provider certified that it would abide by the provisions set forth in the Form CMS-855B, including that they would not submit false or fraudulent claims for payment.

25.  Medicare Provider receives Medicare reimbursement via Electronic Funds Transfer ("EFT"). The EFT enrollment became active in October 2020. when the Medicare Provider authorized Medicare to deposit Medicare Provider's payments into the SUBJECT ACCOUNTS.

26.  There is probable cause to believe that Medicare Provider received claims information relating to Medicare beneficiary identification numbers, including HICNs and MBIs, that it received from Company 1, which is not an affiliate of the Accountholders, after Company 1 caused over-the-counter ("OTC") COVID-19 tests to be mailed to these beneficiaries. Medicare Provider in reliance upon the information provided to it by Company 1, submitted claims to Medicare in those individual's names for the maximum number of OTC COVID-19 tests per month for each beneficiary, resulting in more than $200,000 from Medicare in reimbursements into the SUBJECT ACCOUNTS.

27.  On January 27, 2023, Charles McElwee pleaded guilty in the Southern District of Florida to one count of conspiracy to violate the Federal Anti-Kickback Statute, 42 U.S.C. §

1320a7b(b)(4), which makes it illegal to buy, sell, or distribute Medicare beneficiary identification numbers without proper authority. As part of his guilty plea, McElwee admitted that he and his co-conspirators used "data mining" and "social engineering techniques" to collect Medicare beneficiary information, which McElwee then advertised and sold online. The trafficked information included millions of beneficiary names, addresses, dates of birth, social security numbers, and Medicare beneficiary identification numbers. The company that McElwee and his co-conspirators used in furtherance of this scheme to sell the Medicare beneficiary information was called "Lead Junkies, LLC." McElwee and his co-conspirators advertised and sold Medicare information online through various forums to a large number of providers and marketers.

28. Agents reviewed information from the HHS-OIG Division of Data Analytics which concerned COVID-19 test kit fraud throughout the United States. Specifically, as to Medicare Provider, the data revealed that 22,207 related to beneficiary identification numbers and other personal information that was compromised by Lead Junkies. These beneficiary identification numbers had been provided to Medicare Provider by Company 1.

C. **Defendant Assets**

29. In October 2020, the SUBJECT ACCOUNT number 1001852860 was opened at Pacific Western Bank in the name of the Medicare Provider.

30. An analysis of the account activities from March 2023 through July 2023 reveals deposits of $9,858,569.19 as to which there is probable cause to believe that approximately $2,068,000 were proceeds from the commission of health care fraud perpetrated by Company 1 that was electronically transferred into Account number 1001852860 from Medicare Administrative Contractor, NGS. In the same time period, $9,453,000.00 was transferred from Account number 1001852860 to the Main Account (Account number 1001391281) and to the

8

following Account numbers that were in the names of other members of the Group: 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323.

31.  On August 25, 2023, law enforcement agents served a federal seizure warrant on Pacific Western Bank for the balance of Account numbers: 1001852860, 1001391281, 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323 *See* Case No. 23-MC-03447 (Eastern District of Louisiana.).

32.  Pursuant to that seizure warrant, Pacific Western Bank remitted $1,047,876.24 in U.S. currency from Account numbers: 1001852860, 1001391281, 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323 to the United States Secret Service.

33.  On or about July 23, 2024, the parties reached a settlement agreement whereas Plaintiff agreed to return $816,746.24 in seized funds to Medicare Provider. The remaining $231,130.00 in U.S. currency, which constitutes Defendant Assets, remains in the custody of the Treasury and Customs Suspense Account, under the Department of Homeland Security.

## IV.  BASIS FOR FORFEITURE

34.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity to commit such offense is subject to civil forfeiture.

35.  Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

36.  Pursuant to 18 U.S.C. §§ 1347 and 1349, health care fraud is a "Federal health care offense."

### FIRST CLAIM
**Proceeds of Health Care Fraud**
**18 U.S.C. § 981(a)(1)(C)**

37.     The factual allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

38.     As set forth above, the Defendant Assets are property that constitutes or are derived from proceeds traceable to health care fraud committed by Company 1 in violation of 18 U.S.C. § 1349, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

39.     Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM
**Proceeds of Health Care Fraud**
**18 U.S.C. § 981(a)(1)(C)**

40.     The factual allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

41.     As set forth above, the Defendant Assets are property that constitutes or are derived from proceeds traceable to the commission by Company 1 of health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

42.     Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Assets; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

*/s/Alexandra Giavotella*
ALEXANDRA GIAVOTELLA   (La. 38005)
Assistant United States Attorney
United States Attorney's Office
650 Poydras Street, Suite 1600
New Orleans, Louisiana   70130
Telephone: (504) 680-3065
Email: alexandra.giavotella@usdoj.gov

**PLEASE ISSUE AND SERVE
WARRANT OF ARREST ON:**

$231,130.00 IN U.S. CURRENCY SEIZED FROM ACCOUNT NOS: 1001852860, 1001391281, 1001391331, 1001391265, 1001391273, 1001852688, and 1001391323 AT PACIFIC WESTERN BANK

Located at:
United States Secret Service
Department of Homeland Security
3900 N. Causeway Boulevard, Suite 1400
Metairie, Louisiana 70002

## **VERIFICATION**

I, Elisa Berumen, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the United States Secret Service and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the United States Secret Service.

Executed on this 7th of October, 2024.

/s/Elisa Berumen
ELISA BERUMEN
Special Agent, United States Secret Service

*Pursuant to Federal Rules of Criminal Procedure 4.1 and 41 (d)(3), the undersigned judicial Officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.*